2021R00597/GMB

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **SUPERSEDING CRIMINAL COMPLAINT** |
| v. | : | |
| JOSEPH DUPONT, | : | |
|   a/k/a "Tips," | : | Hon. José R. Almonte, U.S.M.J. |
| DARION HEMINGWAY, | : | |
|   a/k/a "A-boog," | : | |
| JUAN HEMINGWAY, | : | |
|   a/k/a "Hortz," a/k/a "Glizzy," | : | Mag. No. 24-16111 |
| ABDIN REED, | : | |
|   a/k/a "Dean," | : | |
| DARIUS HEMINGWAY, | : | |
|   a/k/a "Deebo," | : | **FILED UNDER SEAL** |
| ASWAD WILLIAMS, | : | |
|   a/k/a "Ock," | : | |
| DAQUAN FRANKLIN, | : | |
|   a/k/a "Big Trigga," | : | |
| DARIUS MCGEACHY, | : | |
|   a/k/a "Black," | : | |
| KHALIS DUTTON, | : | |
|   a/k/a "Kha," | : | |
| AZIZ ROURK, | : | |
|   a/k/a "Ock," | : | |
| DAVID BRYANT, | : | |
|   a/k/a "Hood," | : | |
| KAI ROBINSON, | : | |
|   a/k/a "Kai Gzz," | : | |
| TONY PAGE, | : | |
|   a/k/a "Tony Cz," | : | |
| CHAJUAN HEMINGWAY, | : | |
|   a/k/a "Juan," | : | |
| STEPHON MURPHY, | : | |
|   a/k/a "Turk," | : | |
| MUHAMMADO DIOKHANE, | : | |
|   a/k/a "Mo," | : | |
| LOGAN JAMISON, | : | |
|   a/k/a "Lo," | : | |
| DANIQUE SIMPSON, | : | |
|   a/k/a "Biz," | : | |
| ALVIN BURROUGHS, | : | |
| ROBERT FLETCHER, | : | |

|                           |   |
|---------------------------|---|
| a/k/a "Chevy,"            | : |
| JERMAIN YOUNG,            | : |
| MESSIAH GREEN,            | : |
| a/k/a "Half,"             | : |
| JASUAN POSEY,             | : |
| a/k/a "Jah," and          | : |
| LINDA GRAHAM,             | : |

I, Anthony Santorelli, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

/s/ Anthony Santorelli
Anthony Santorelli, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Special Agent Anthony Santorelli attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this  9  day of October, 2024.

Hon. José R. Almonte
United States Magistrate Judge

2021R00597/GMB

# ATTACHMENT A

## Count One
### (Conspiracy to Commit Bank Fraud)

From at least in or around November 2022 through on or about May 30, 2024, in the District of New Jersey, and elsewhere, the defendants,

**JOSEPH DUPONT,**
a/k/a "Tips,"
**ABDIN REED,**
a/k/a "Dean,"
**DAQUAN FRANKLIN,**
a/k/a "Big Trigga,"
**KAI ROBINSON,**
a/k/a "Kai Gzz,"
**TONY PAGE,**
a/k/a "Tony Cz,"
**CHAJUAN HEMINGWAY,**
a/k/a "Juan,"
**MUHAMMADO DIOKHANE,**
a/k/a "Mo,"
**LOGAN JAMISON,**
a/k/a "Lo,"
**DANIQUE SIMPSON,**
a/k/a "Biz,"
**ALVIN BURROUGHS,**
**ROBERT FLETCHER,**
a/k/a "Chevy,"
**JERMAIN YOUNG,**
**MESSIAH GREEN,**
a/k/a "Half,"
**JASUAN POSEY,**
a/k/a "Jah," and
**LINDA GRAHAM,**

knowingly and intentionally conspired and agreed with others, to execute and attempt to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, whose deposits were insured by the Federal Deposit Insurance Corporation or whose accounts were insured by the National Credit Union Insurance Fund, and to obtain money, funds, assets and other property owned by, and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1349.

### Count Two
### (Conspiracy to Distribute Controlled Substances)

From at least in or around November 2023 through on or about May 30, 2024, in Hudson County, in the District of New Jersey, and elsewhere, the defendants,

**JOSEPH DUPONT,**
a/k/a "Tips,"
**DARION HEMINGWAY,**
a/k/a "A-boog,"
**JUAN HEMINGWAY,**
a/k/a "Hortz," a/k/a "Glizzy,"
**ABDIN REED,**
a/k/a "Dean,"
**DARIUS HEMINGWAY,**
a/k/a "Deebo,"
**ASWAD WILLIAMS,**
a/k/a "Ock,"
**DAQUAN FRANKLIN,**
a/k/a "Big Trigga,"
**DARIUS MCGEACHY,**
a/k/a "Black,"
**KHALIS DUTTON,**
a/k/a "Kha,"
**AZIZ ROURK,**
a/k/a "Ock,"
**DAVID BRYANT,**
a/k/a "Hood,"

did knowingly and intentionally conspire with each other and others to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; and a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

## Count Three
## (Hobbs Act Robbery)

On or about May 6, 2024, in Hudson County, in the District of New Jersey, and elsewhere, the defendant,

**JUAN HEMINGWAY,
a/k/a "Hort," and
STEPHON MURPHY,
a/k/a "Turk,"**

did knowingly and willfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, and the movement of articles and commodities in such commerce, by robbery, and did commit and threaten force and violence to the person and property of another, namely, Victim-1 and Victim-2, in furtherance thereof.

In violation of Title 18, United States Code, Section 1951(a) and Section 2.

## Count Four
### (Use of a Firearm During and in Relation of a Crime of Violence)

On or about May 6, 2024, in Hudson County, in the District of New Jersey, and elsewhere, the defendant,

**JUAN HEMINGWAY,**
a/k/a "Hort," and
**STEPHON MURPHY,**
a/k/a "Turk,"

during and in relation to a crime of violence for which the defendants may be prosecuted in a court of the United States, namely Hobbs Act Robbery charged in Count Three of this Complaint, did knowingly use and carry a firearm, which was brandished, and did aid and abet the same.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

## Count Five
### (Possession with Intent to Distribute Controlled Substances)

On or about May 30, 2024, in Essex County, in the District of New Jersey, and elsewhere, the defendant,

**DANIQUE SIMPSON,**
**a/k/a "Biz,"**

did knowingly and intentionally possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## **ATTACHMENT B**

I, Anthony Santorelli, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including video surveillance and other documents. Because this complaint is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### **Relevant Individuals and Entities**

1. At all times relevant to this Complaint, unless otherwise indicated:

   a. Joseph Dupont, a/k/a "Tips" ("Dupont"); Darion Hemingway, a/k/a "A-boog" ("Darion"); Juan Hemingway, a/k/a "Hortz," a/k/a "Glizzy" ("J. Hemingway"); Abdin Reed, a/k/a "Dean" ("Reed"); Darius Hemingway, a/k/a "Deebo" ("Darius"); Aswad Williams, a/k/a "Ock" ("Williams"); Daquan Franklin, a/k/a "Big Trigga" ("Franklin"); Darius McGeachy, a/k/a "Black" ("McGeachy"); Khalis Dutton, a/k/a "Kha" ("Dutton"); Aziz Rourk, a/k/a "Ock" ("Rourk"); David Bryant, a/k/a "Hood" ("Bryant"); Kai Robinson, a/k/a "Kai Gzz" ("Robinson"); Tony Page, a/k/a "Tony Cz" ("Page"); Chajuan Hemingway, a/k/a "Juan" ("C. Hemingway"); Stephon Murphy, a/k/a "Turk" ("Murphy"); Muhammado Diokhane, a/k/a "Mo" ("Diokhane"); Logan Jamison, a/k/a "Lo" ("Jamison"); Danique Simpson, a/k/a "Biz" ("Simpson"); Alvin Burroughs ("Burroughs"); Robert Fletcher, a/k/a "Chevy" ("Fletcher"); Jermain Young ("Young"); Messiah Green, a/k/a "Half" ("Green"); Jasuan Posey, a/k/a "Jah" ("Posey"); and Linda Graham ("Graham"), among others, were either members, associates of, or affiliated with the neighborhood-based street gang that operates primarily within and around the Booker T. Washington Housing Complex in Jersey City, New Jersey.

   b. JPMorgan Chase ("Chase"), Wells Fargo, Capital One, Bank of America ("BoA"), Flagstar Bank, M&T Bank, KeyBank, TD Bank, and SoFi Bank were financial institutions within the meaning of Title 18, United States Code, Section 20, whose deposits were insured by the Federal Deposit Insurance Corporation or whose

accounts were insured by the National Credit Union Insurance Fund (the "Financial Institutions").

## **THE BOOKER T. WASHINGTON HOUSING COMPLEX DRUG TRAFFICKING ORGANIZATION**

2. Members and associates of the neighborhood-based street gang that operates primarily within and around the Booker T. Washington Housing Complex in Jersey City, New Jersey ("Booker T.") have been involved in gang-related feuds that have resulted in numerous acts of violence. This includes the murder of Victim T.R. on or about January 1, 2018, the shooting of Victim Q.W. on or about June 17, 2020, and the shooting of Victim N.B. on or about January 8, 2022.

3. The investigation to date has revealed that members of the Booker T. drug trafficking organization ("DTO") who are associated with the Booker T. street gang, including Dupont, Darion, J. Hemingway, Reed, Darius, Williams, Franklin, McGeachy, Dutton, Rourk, and Bryant, have also been involved in narcotics distribution. As members and associates of the DTO, these co-conspirators distributed controlled substances, including heroin, fentanyl, and cocaine, within and around the Booker T. Washington Housing Complex.

4. The Booker T. Washington Housing Complex is equipped with a CCTV surveillance video system, which depicts nearly every area in and around the complex. The complex, in its entirety, consists of 9 buildings, each of which contains multiple entrances, which contain numerous residential units. The DTO primarily operates within the hallways in 66 Fremont Street in Jersey City, New Jersey. While some hand-to-hand narcotics transactions occur outside the building, the majority are conducted within the hallway areas in 66 Fremont Street.

5. Throughout the duration of the investigation, law enforcement has utilized numerous investigative techniques, including fixed and mobile surveillance, lawfully recorded communications, GPS mobile tracking devices, and the use of confidential sources, among others. Moreover, law enforcement has arrested individuals who have purchased controlled substances from members of the DTO immediately after such transactions on multiple occasions. These arrests, and subsequent laboratory testing of the substances seized, have confirmed that the DTO sells cocaine, heroin, and fentanyl.

6. With these investigative techniques, law enforcement has observed that members of the DTO distribute controlled substances at the Booker T. Washington Housing Complex daily. Significantly, the investigation has resulted in the recording of hundreds of narcotics transactions committed by the DTO's members. Notably, for months, law enforcement officers have observed and documented dozens of transactions involving Dupont, Darion, J. Hemingway,

Reed, Darius, Williams, Franklin, McGeachy, Dutton, Rourk, and Bryant, and others. For example:

 a. On or about November 20, 2023, law enforcement observed J. Hemingway participate in a narcotics transaction in the area of the Booker T. Washington Housing Complex.

 b. On or about December 30, 2023, law enforcement observed Dupont participate in a narcotics transaction with others in the area of the Booker T. Washington Housing Complex.

 c. On or about January 22, 2024, law enforcement observed Darion participate in a narcotics transaction in the area of the Booker T. Washington Housing Complex.

 d. On or about February 21, 2024, law enforcement conducted a controlled purchase of narcotics involving Darion in the area of the Booker T. Washington Housing Complex.

 e. On or about February 21, 2024, law enforcement conducted a controlled purchase of narcotics involving Bryant in the area of the Booker T. Washington Housing Complex.

 f. On or about February 24, 2024, law enforcement observed Rourk participate in a narcotics transaction in the area of the Booker T. Washington Housing Complex.

 g. On or about March 7, 2024, law enforcement conducted a controlled purchase of narcotics involving Franklin in the area of the Booker T. Washington Housing Complex.

 h. On or about April 3, 2024, law enforcement conducted a controlled purchase of narcotics involving Williams in the area of the Booker T. Washington Housing Complex.

 i. On or about April 23, 2024, law enforcement conducted a controlled purchase of narcotics involving Darius in the area of the Booker T. Washington Housing Complex.

 j. On or about May 20, 2024, law enforcement observed what they believed to be—based on their training and experience—a narcotics transaction between Reed and another individual in the area of Van Houten Avenue in Jersey City, New Jersey.

 k. On or about May 19, 2024, law enforcement observed Dutton participate in a narcotics transaction in the area of the Booker T. Washington Housing Complex.

      l. On or about May 22, 2024, law enforcement observed McGeachy participate in a narcotics transaction in the area of the Booker T. Washington Housing Complex.

7. Throughout the duration of the conspiracy, the DTO has distributed and possessed with intent to distribute in excess of 40 grams of a mixture and substance containing a detectable amount of fentanyl and in excess of 100 grams of a mixture and substance containing a detectable amount of heroin.

## **OVERVIEW OF THE CONSPIRACY TO COMMIT BANK FRAUD**

8. The investigation to date has shown that from at least in or around November 2022 through on or about May 30, 2024, Dupont, Reed, Franklin, Robinson, Page, C. Hemingway, Diokhane, Jamison, Simpson, Burroughs, Fletcher, Young, Green, Posey, and Graham conspired and agreed with each other, and with others, to engage in a fraudulent check scheme. The scheme involved obtaining access to bank accounts at various financial institutions, including the Financial Institutions. The co-conspirators would then deposit into their own bank accounts, or those of third parties, fraudulent checks that they themselves had printed, stolen checks that they themselves had altered, or checks that had been purchased from, or traded with, other co-conspirators or third parties in exchange for a fee or a percentage of profits.

9. In particular, the investigation has revealed that the co-conspirators would obtain bank account information, and often debit cards, from third parties who had access to open accounts at banks like the Financial Institutions. Alternatively, the co-conspirators would utilize bank accounts in their own names at banks like the Financial Institutions. The co-conspirators and others would then attempt to deposit fraudulent checks at various financial institutions, like the Financial Institutions, throughout New Jersey. The co-conspirators themselves, or the third parties who held accounts at the financial institutions, would later attempt to withdraw funds from those bank accounts before the victim financial institutions could flag the fraud and decline the checks.

10. Based on my training and experience, individuals receiving unauthorized funds frequently attempt to withdraw stolen funds before victims or their banks discover the theft and attempt to reverse the deposited check withdrawals or wire transfers. Because banks frequently limit the amount of cash that can be withdrawn from a single ATM, and because the government requires banks to report cash withdrawals in excess of $10,000, individuals who conduct fraudulent deposits frequently attempt to circumvent these limitations by withdrawing cash on the same day at different bank branches, through various mobile payment applications like CashApp and Zelle, and through money orders purchased from United States Post Office locations.

11. Following the successful withdrawal or transfer of unauthorized funds, the co-conspirators would split the proceeds of the fraud among themselves, often with a payment going to the third parties who had given them access to the third party bank accounts. The co-conspirators who engage in the fraudulent check scheme and also sell and distribute controlled substances on behalf of the DTO are further enriched by the proceeds derived from the fraudulent check scheme.

12. The investigation to date has also revealed that the co-conspirators use social media to communicate regarding the fraudulent check scheme, to publicly advertise the successes of their scheme to others, and to seek to obtain access to additional third party bank accounts to further the fraudulent check scheme. I have reviewed numerous communications in which the co-conspirators, and others, solicited accountholders at various financial institutions, like the Financial Institutions, to provide their banking information to the co-conspirators in exchange for the promise of cash. The below chart shows a list of representative acts in furtherance of the fraudulent check scheme committed by Dupont, Reed, Franklin, Robinson, Page, C. Hemingway, Diokhane, Jamison, Simpson, Burroughs, Fletcher, Young, Green, Posey, Graham, and others:

| Defendants | Financial Institutions | Conduct |
|---|---|---|
| Dupont; Robinson | Wells Fargo | On or about December 25, 2022, Robinson and Dupont discussed Dupont utilizing a Wells Fargo debit card that was in Robinson's possession. On or about January 11, 2023, Dupont sent to Robinson a photograph of a debit card in the name of a third party, with a receipt reflecting a check deposit of $5,000. The check was later returned as fraudulent. |
| Dupont; Simpson | KeyBank | From at least on or about January 14, 2023 through on or about January 5, 2024, Simpson and Dupont communicated through social media regarding check fraud. As an example, on or about February 12, 2023, Simpson sent Dupont photographs of numerous checks, stating that the total value of the checks was $29,000, and inquiring whether Dupont knew anyone who would purchase the checks for between $2,000 and $2,500. Dupont responded by sending Simpson a photograph of numerous checks, indicating he had just acquired new checks. As another example, on or about April 1, 2023, Simpson asked Dupont if he had any checks for sale, which Dupont confirmed. Simpson |

| | | |
|---|---|---|
| | | requested checks between $7,000 and below $20,000, and Dupont responded by sending Simpson a photograph of a check for sale for $700, which was titled to one third party and made payable to a different third party. Simpson confirmed that he wished to purchase the check and Dupont asked when he planned to pick it up. The investigation has revealed that the maker of the check ultimately put a stop payment on the check. |
| Dupont; Franklin | TD Bank | On or about February 27, 2023, Dupont sent Franklin screenshots of two different accounts from the TD Bank mobile bank application reflecting available balances after deposits. Dupont instructed Franklin to post the images to Franklin's Instagram account and to remove identifying account numbers. Franklin and Dupont also discussed Franklin acquiring a Wells Fargo debit card and opening an account at SoFi Bank. Dupont advised Franklin regarding the type of bank account that he should open. On or about July 30, 2023, Dupont instructed Franklin to post about the fraudulent check scheme on Instagram to solicit third party account holders. |
| Graham | Capital One | On or about March 23, 2023, a fraudulent check was deposited into an account owned by Graham at a Capital One location in Jersey City, New Jersey. Bank records indicate that funds were subsequently withdrawn from the Capital One account through Apple Cash transfers, ATM withdrawals, and debit card purchases. |
| Posey | Flagstar Bank | On or about July 12, 2023, Posey was captured on ATM surveillance footage depositing a fraudulent check into his own bank account. |
| Green | SoFi Bank | On or about July 13, 2023, Green sent a message to a third party indicating that Green was selling fresh checks. The third party asked Green how much the checks would cost, and Green requested that the third party provide Green with his/her Telegram account. The third party provided Green with his/her Telegram account. Subsequently, between on or about August 4, 2023 and August 7, 2023, the third party sent a screenshot from the SoFi Bank mobile banking application depicting account deposit limits. The |

| | | |
|---|---|---|
| | | third party then advised Green that he/she would provide Green with the email address, password, and debit card associated with the account. |
| Dupont; Page | TD Bank | On or about July 20, 2023, Page informed Dupont that he was at TD Bank and asked Dupont what type of account he should open. Later that day, Page informed Dupont that he had successfully opened accounts. The following day, Page provided Dupont with a PIN code and address associated with the account. Dupont indicated that he would deposit checks into the account in short order. Several months later, Page cautioned Dupont not to use Page's bank account at TD Bank if there was a chance that the TD Bank would identify an issue with the account. |
| Dupont; C. Hemingway | SoFi Bank; Chase | As one example, on or about July 31, 2023, Dupont advised C. Hemingway that he had just met with another individual to pick up money, that the same individual would be going back to Newark to create fraudulent checks, and that the individual would return with a large sum of money. On or about August 1, 2023, Dupont sent a photograph of a mobile banking application depicting a total available balance of $43,583.37 and advising C. Hemingway that the entire amount had cleared on the account. As another example, on or about May 3, 2024, C. Hemingway and Dupont were observed by law enforcement traveling from the Booker T. Washington Housing Complex to a Chase location in Jersey City, New Jersey.  The driver of the vehicle was observed exiting the vehicle, walking up to the Chase ATM, and returning to the vehicle with an envelope. The vehicle subsequently departed the area. |
| Dupont; Green | | On or about October 11, 2023, Dupont advised J. Hemingway that Dupont was presently at Green's residence.  Based on training and experience and the investigation to date, law enforcement understands that Dupont communicated to J. Hemingway that Green had successfully completed a fraudulent transaction and that Green would be using peer-to-peer money transfers to withdraw funds from the account. |
| Dupont | Capital One | On or about December 3, 2023, Dupont communicated with a third party regarding the |

|  |  | third party's bank account at Capital One. Dupont sent a photograph of a debit card to the third party, who indicated that the debit card did not belong to him/her.  Dupont then sent a photograph of the correct debit card to the third party account holder.  Bank records reflect that two checks were fraudulently deposited into the third party's Capital One bank account, funds were transferred to the third party via CashApp, funds were transferred to another third party via Zelle, and one check was fraudulently deposited into the bank account associated with photographed debit card that Dupont erroneously sent to the third party. |
|---|---|---|
| Jamison; Young; Posey | M&T Bank; Chase | On or about December 5, 2023, Young was captured on ATM surveillance footage depositing a fraudulent check into a third party's bank account at M&T Bank. On or about December 6, 2023, an individual wearing similar clothing was captured on ATM surveillance footage withdrawing funds from the bank account. On that same day, three money orders were purchased at two different United States Post Office locations in the District of New Jersey, and later negotiated. Jamison was identified as the payer and payee on one of the money orders, which was cashed at a post office. Posey was identified as the payer and payee on another of the money orders, which was deposited into a Chase bank account owned by Posey. |
| Dupont; Fletcher | Chase; Capital One | On or about January 2, 2024, Fletcher asked Dupont if he had access to Chase and Capital One debit cards to use in furtherance of the fraudulent check scheme.  Dupont responded that he did have access to a Chase debit card and may have access to a Capital One debit card. Fletcher indicated that he would like to use the Chase debit card the following day and represented that he had checks in the amounts of $91,000; $155,000; and $35,000 available to deposit.  Dupont agreed to utilize the Chase debit card, indicated that he would contact the account holder of the Chase account, and requested Fletcher's telephone number.  As another example, on or about May 13, 2024, Fletcher and |

| | | |
|---|---|---|
| | | Dupont discussed a Capital One debit card in Fletcher's possession. Dupont inquired how old the account was, and Fletcher indicated that he would confirm with the third party account holder. |
| Dupont; Reed; Fletcher | Chase | On or about May 3, 2024, Reed, Dupont, and Fletcher discussed traveling to a bank in Jersey City, New Jersey. That day, law enforcement observed Dupont and Reed exit a Chase Bank in Jersey City, New Jersey. |
| Dupont; Diokhane; Jamison | Chase | On or about May 6, 2024, Dupont informed Jamison that he would have "Mo" send a PDF file to Jamison. The investigation has revealed that "Mo" is the alias for Diokhane. Law enforcement further believes that the PDF file reference by Dupont contained images that would be used to print fraudulent checks. On or about May 11, 2024, law enforcement observed Diokhane and Dupont drive to a Chase Bank location in Jersey City, New Jersey, where Diokhane entered the bank, exited, and subsequently drove to the area of the Booker T. Washington Housing Complex. |
| Dupont; Fletcher | | On or about May 10, 2024, Fletcher asked Dupont whether he had any personal checks available. Dupont indicated that he did not and advised that he needed to obtain some as well. |
| Dupont; Reed | BoA | On or about May 11, 2024, Dupont and Reed discussed Reed's access to a third party's business bank account at BoA. Based on training and experience and the investigation to date, law enforcement understands Dupont to have referenced checks ranging from $160,000 to $180,000 to potentially deposit into the BoA account. Reed and Dupont agreed that any such deposit should occur in a suburban area. |
| Dupont; Diokhane | | On or about May 13, 2024, Dupont and Diokhane discussed a check deposit. Based on training and experience and the investigation to date, law enforcement understands that Diokhane advised Dupont that he forgot to print out the back of a check. |
| Dupont; Graham | Chase | On or about May 15, 2024, Dupont advised Graham that a bank had flagged a transaction. Graham inquired whether the account holder was from the south, which Dupont confirmed, and |

|  |  | whether the check had cleared. Based on the investigation to date, law enforcement believes that the account referenced belonged to a third party account holder at Chase. At least one check suspected as being fraudulent has been deposited in that account previously. Graham also asked Dupont about a transaction involving approximately $280,000.00, to which Dupont advised that the funds would be made available on the account in two to five days. |
|---|---|---|
| Dupont; Burroughs |  | On or about May 22, 2024, Burroughs and Dupont discussed whether an opportunity might be available for Burroughs to participate in the fraudulent check scheme. Burroughs indicated that he needed money. Later that day, law enforcement observed Burroughs and Dupont in the area of the Booker T. Washington Housing Complex. During the meeting, Dupont was observed handing Burroughs what appeared to be a check. |

### THE ARMED ROBBERY IN THE AREA OF THE BOOKER T. WASHINGTON HOUSING COMPLEX

13. On or about May 6, 2024, members of the Jersey City Police Department (the "Officers") received reports of an armed robbery in the area of the Booker T. Washington Housing Complex. In particular, the Officers were alerted that two men had robbed an individual ("Victim-1") of various items, including a wallet, United States currency, and electronic devices. After further investigation, including a review of CCTV footage, law enforcement identified the two men as Murphy and J. Hemingway.

14. In particular, law enforcement learned that Victim-1 had driven in a black Chevrolet pickup truck (the "Pickup"), along with another individual ("Victim-2") (collectively, with Victim-1, the "Victims"), to the area of the Booker T. Washington Housing Complex. An unidentified male ("UM-1"), who was operating a silver Ford sedan (the "Ford"), exited the Ford and approached Victim-1 and Victim-2 in the Pickup. Victim-1 then exited the Pickup and followed UM-1 back to the Ford, while Victim-2 remained in the front passenger seat of the Pickup. UM-1 entered the driver's seat of the Ford and Victim-1 entered the front passenger seat of the Ford.

15. Shortly thereafter, Murphy and J. Hemingway approached the front passenger side of the Ford and caused Victim-1 to exit the vehicle. Murphy proceeded to search the passenger side of the Ford. J. Hemingway then began to tussle with Victim-1 and blocked Victim-1's attempt to run back to the Pickup.

When Victim-1 did ultimately escape to the passenger side of the Pickup, J. Hemingway reached into the open driver's side window of the Pickup and retrieved two cell phones and a tablet belonging to the Victims.

16. CCTV footage demonstrates that Murphy then chased after Victim-1 and grabbed him with one hand, while carrying a black handgun in his other hand. Murphy then took items from the front and rear pockets of Victim-1's pants. Murphy then also removed the belt from Victim-1's waist, causing the belt to break and causing Victim-1's pants to fall to the ground. Murphy and J. Hemingway then searched Victim-1's waistline for items and Murphy took an item that he recovered from the inside of Victim-1's pants. Both Murphy and J. Hemingway subsequently fled the area. The investigation, including witness statements, revealed that Murphy and J. Hemingway robbed Victim-1 of, among other items, controlled substances, including Percocet pills.

17. Later that day, on or about May 6, 2024, J. Hemingway posted on social media a photograph of an orange pill bottle with numerous pills—some inside the bottle and nine (9) pills displayed outside the bottle. The pills were marked with the number "230" on one side and a "C" on the other side, indicating that they were Percocet 30's. Above the photograph on the social media post was a picture of a lemon and "$15," suggesting that J. Hemingway was advertising the Percocet 30's for sale. Based on the investigation to date, law enforcement believes that Murphy and J. Hemingway stole the Percocet 30's from Victim-1 during the armed robbery.

**LAW ENFORCEMENT SEIZURE OF CONTROLLED SUBSTANCES**

18. On or about May 30, 2024, law enforcement located Simpson inside an apartment in Belleville, New Jersey. Upon finding Simpson, law enforcement observed him attempting to destroy electronic devices, including a laptop computer and a cell phone. Simpson was arrested pursuant to the federal warrant issued in connection with this case. Law enforcement subsequently obtained and executed a judicially authorized search warrant of the apartment, which search revealed approximately 70 grams of suspected heroin, including packaging.